DECISION
Plaintiff appeals the real market value of its improvement for tax year 2007-08. A trial was held on Wednesday, November 12, 2008, in the Oregon Tax Courtroom, Salem, Oregon. David P. Weiner, Attorney at Law, appeared on behalf of Plaintiff. John Taylor (Taylor), Oregon licensed broker, testified on behalf of Plaintiff. Scott A. Norris, Assistant County Counsel, appeared on behalf of Defendant. Thomas D. Rohlfing (Rohlfing), Marion County Senior Property Appraiser, testified on behalf of Defendant.
Plaintiff's Exhibit 1 and Defendant's Exhibit A were received without objection.
 I. STATEMENT OF FACTS
Plaintiff appealed the 2007-08 real market value of the subject property identified as Account R22411 to the Board of Property Tax Appeals (BOPTA). The BOPTA Order dated February 25, 2008, "sustained" the "values on the tax roll:"

Real Market Value: Land: $ 1,002,840
 Structures: $14,784,740
 Total: $15,787,580
Maximum Assessed Value: $11,172,980
Assessed Value: $11,172,980
 *Page 2 
After considering the three approaches for valuation, cost, income and market, Plaintiff concluded that the subject property's real market value is $12,309,000. (Ptf's Ex 1 at 32.) After considering the three approaches to value, Defendant concluded that the subject property's real market value is $12,500,000. (Def's Ex A at 15.) Defendant stated that it was willing to stipulate to a real market value of $12,309,000 for the subject property.
Plaintiff now appeals only the improvement real market value which is an apartment complex (178 units) located in northeast Salem, Oregon. (Ptf's Ex 1 at 1.) Throughout his appraisal and testimony Taylor used the term "improvement" or "improvement value" for the structures referenced in the BOPTA Order. (Ptf's Ex 1.) The parties stipulate that Plaintiff is permitted to only appeal the improvement value. See Nepomv. Dept. of Revenue (Nepom), 272 Or 249, 256, 536 P2d 496 (1975) (holding that the taxpayer "was entitled to challenge only the value of the improvements * * *"). Plaintiff does not appeal the subject property's land real market value. Even though the land value is not appealed, Taylor testified that land is important because the land value, which includes "[o]n-site and [o]ff-site development cost, or OSDs," is subtracted from the subject property's total real market value to determine the "value contribution of the structure to the land." (Ptf's Ex 1 at 3, 4.) The parties stipulate that the definition of land includes any "site development made to the land, [including] fill, grading, leveling, underground utilities, underground utility connections and any other elements identified by rule of the Department of Revenue." See ORS 307.010(a).[1] *Page 3 
In support of his determination of the subject property's real market value, Taylor, who described himself as a "mostly retired" 20-year Clackamas County Assessment and Taxation commercial appraiser, submitted and reviewed his analysis. (Ptf's Ex 1.) Looking first to the issue of real market value of land, Taylor testified that he compared four land sales located within the city of Salem to the subject property's land. (Id. at 8.) The comparable properties were zoned "RM" with the exception of Sale #1, which was zoned "RM-2," and two of the four comparable land sales were of similar "usable" square footage and acreage. (Id.) Before computing "three units of value," Taylor concluded that Sale #4 should be "given no weight" because it was "much smaller than the subject and the sale price seems low compared to the other land sales." (Id. at 9, 16.) None of the sale prices was adjusted for time.
Using the three comparable sales, Taylor computed a $6 price per square foot that he multiplied by the subject property's usable square footage to compute an indicated value of $2,229,401. (Id. at 10.) Next, Taylor computed a "sale price per unit feasible" rather than a sale price per unit allowed, because "[a]s a practical matter, * * * land is often developed with fewer units than technically allowed by the zoning." (Id. at 11.) Taylor's indicated value based on $14,000 "per unit [feasible]" was $2,492,000 compared to $2,136,000 based on $12,000 per "maximum units allowable by zoning." (Id. at 12, 13, and 14.) Taylor's analysis included "out of area" sales even though "[n]o valuation [was] made from these out of area comparable properties because of the difficulty of adjusting for the different locations." (Id. at 14, 15, and 16.) Finally, Taylor compared the "three units of value" and determined a "[f]inal estimate of raw land value" of $2,200.000. (Id. at 16.) *Page 4 
To his estimated "raw land value," Taylor added "actual expenditures made in preparing the land for construction." (Id. at 16.) He testified that the "[t]otal reported OSD cost[]" was $3,323,375. (Id. at 17.) Taylor testified that he increased the OSD costs three percent "compounded" because the "inflation rate has been three percent for the state during the last several years." In addition, he subtracted a "wetland contribution" because "wetland issues [were] not considered when comparing the subject to the comparables because [wetland issues] had been cured by the appraisal date." (Ptf's Ex 1 at 17.) Taylor computed a wetland contribution amount of $391,600 using an estimated cost of "$2,200 per unit" based on the difference between the cost of this site and a 302 unit development in Wilsonville having no abnormal wetlands problems. The Wilsonville development, Village at Main, was a similar design, built by the same developer." (Id.) The total adjusted OSD cost was $3,294,023 which was added to the estimated land value ($2,300,000[2]) to determine the total real market land value of $5,594,000 (rounded). (Id.)
Taylor subtracted the indicated real market of land ($5,594,000) from the subject property's total real market value ($12,309,000) to determine "the improvement value as of the appraisal date." (Id. at 33.) He concluded that the improvement real market value is $6,715,000. (Id.)
Because Plaintiff did not appeal the land real market value, Rohlfing's appraisal report did not include any market analysis of land. He testified that he did not make "an independent appraisal of land" and that he had no information "that shows the OSD costs were not in the land value" and no "knowledge of the actual OSD costs." Rohfling concluded that the "income approach is the best and most accurate measure of value for income producing multifamily *Page 5 
properties" like the subject property; and that the income approach is "most closely related to market perceptions of the performance and value of similar income-producing properties." (Def's Ex A at 15.) He stated that "[a]t $12,500,000, it is also the lowest indicator in this appraisal." (Id.) Rohlfing subtracted the land real market value ($1,002,840) stated on the tax roll as of the assessment date from his opinion of value of the subject property determined using the income approach. (Id.) The result was a real market value of $11,497,160 for the subject property's improvement. (Id.) For the cost approach, Rohlfing added the tax roll land value ($1,002,840) to the improvement costs ($12,899,670) computed using "the Marshall Swift Service."[3]
(Def's Ex A at 12.) Rohlfing concluded that even though the cost approach supported the "value arrived at using the income approach for this property" the "income approach stands out as clearly superior to the others" because he did not "have actual costs." (Id. at15.)
 II. ANALYSIS
A taxpayer must have standing to bring a property tax appeal to the court. See ORS 305.275. To have standing, a taxpayer must be "aggrieved." ORS 305.275(1)(a). "In requiring that taxpayers be `aggrieved' under ORS 305.275, the legislature intended that the taxpayer have an immediate claim of wrong. It did not intend that taxpayers could require the expenditure of public resources to litigate issues that might never arise." Kaady v. Dept. of Rev., 15 OTR 124, 125
(2000).
In most cases, for a taxpayer to be aggrieved, the alleged real market value must be lower than the maximum assessed value. Parks WestsacL.L.C. v. Dept. of Rev. (Parks Westsac), 15 OTR 50, 52 (1999). For the 2007-08 tax year, Plaintiff filed a timely appeal from BOPTA's *Page 6 
Order. Plaintiff alleges that the subject property's real market value is $12,309,000. (Ptf s Ex 1 at 33.) Defendant asks that the court's analysis stop with Plaintiffs determination of the subject property's real market value and Defendant's willingness to stipulate to a total real market value of $12,309,000. Defendant states that the agreed real market value of $12,309,000 is more than the maximum assessed value, and, therefore, Plaintiff is not aggrieved. This court held that a taxpayer is not aggrieved "[s]o long as the property's maximum assessed value is less than its real market value." Parks Westsac, 15 OTR at 52. Plaintiff alleges that, when the real market tax roll value of land, which it is not appealing, is added to Plaintiffs determined improvement real market value, the subject property's real market value is less than the subject property's maximum assessed value. The parties stipulated that Plaintiff is permitted to appeal only the improvement, which it is doing. If the court agrees with Plaintiff and orders a change in the improvement real market value, the subject property's total real market value will be less than its maximum assessed value. At that time, Plaintiff will be aggrieved. The court continues its analysis to determine if it agrees with Plaintiff.
The 2007-08 real market value of the subject property's improvement is at issue. To determine the improvement real market value, Plaintiffs starting point is the real market value of the subject property. The parties stipulated that the subject property's real market is $12,309,000. To determine the improvement real market value, Taylor subtracted the land real market value from the total real market value. Taylor's determination of land real market value began with four comparable sales located in the area and two comparable sales located outside the area.[4] His final conclusion of value was based on a comparison of values determined using three different units: square footage, units feasible, and maximum units allowable by zoning. For two of the units, square footage and units feasible, Taylor selected a value at the low end of *Page 7 
the range. For the maximum units allowable by zoning, he selected a value at the top of the range. Taylor's "final estimate of raw land value" was $2,200,000. (Ptf's Ex 1 at 16.) Defendant did not make an independent appraisal of land because it was not appealed. Defendant did not question Taylor about his analysis.
Taylor added OSD costs adjusted for inflation and reduced for wetland remediation costs to his "final estimate of raw land value." He presented no documented support for the three percent inflation adjustment. Taylor's estimate of the wetland remediation cost was based on a comparison of the cost per unit of the subject property and a much larger unit development located outside the area in Wilsonville. Taylor's methodology is well recognized but his per unit cost comparison may understate the actual wetland remediation cost. Defendant did not question Taylor about his methodology nor present its own evidence.
Plaintiff has the burden of proof, which it has met. Taylor uses the commonly accepted comparable sales approach to determine the real market value of vacant land and, to that value, he adds development costs as required by ORS 307.010(a). The court was not presented with any evidence to challenge Taylor's determination of value. After careful review of Plaintiff's evidence, the court concludes that Plaintiff's evidence supports a land real market value as of the assessment date of $5,000,000.
The tax roll must separately state a real market value of land and improvement. ORS 308.215(1)(e) and (f) (2005). Each value is determined separately.[5] Plaintiff is not appealing the tax roll real market value for land in the amount of $1,002,840. The court cannot *Page 8 
order a change to land value when that value is not appealed to the court. The Oregon Supreme Court clearly stated that the court cannot order a reduction in the value of improvements and then add that reduction to land when only the improvement real market value is appealed. See Nepom, 272 Or at 256.
Plaintiff only appeals the improvement value. The court has jurisdiction to order a change in value if the statutory requirements are met and the evidence supports a change. In this case, the parties independently determined the subject property's total real market value, and Defendant agreed to accept Plaintiff's determination that was comparable to its value determination. Plaintiff's evidence as to the real market value of land was not challenged. After having determined both a total value and a land value, the improvement value is a simple mathematical subtraction — the subject property's total real market value less land real market value. Defendant challenged Plaintiff's "methodology," but presented no support for its challenge, stating that a comparison between the stipulated total real market value and the total real market value on the tax roll after a reduction in the improvement real market value shows that the method does not work. Defendant alleges that, if the court reduces the improvement real market value and adds that improvement value to the tax roll, then the real market value of land and the subject property's total value will be less than Plaintiff's own "value conclusion" of $12,309,000. (Ptf's Ex 1 at 32.) Defendant asserts that Plaintiff is playing a "shell game" and it should not be allowed "to shift value" to land which it is not appealing. Defendant challenges Plaintiff's "methodology," noting that Taylor "shifts approximately $4.5 Million out of improvement to land" and then "goes back to the tax roll land value."
The law allows a taxpayer to appeal either land value or improvement value or both values. If a taxpayer appeals only one value and secures a reduction in that value, the sum of the *Page 9 
two values will be less than the sum of the tax roll values before the appeal. Defendant's own evidence supports Plaintiffs determination of the subject property's total real market value. Defendant alleges that, because the land value is not appealed, the court cannot consider evidence in support of the conclusion that the tax roll land real market value is incorrect. There is no such statutory prohibition.[6]
Plaintiff presents evidence supporting its determination of the land real market value. That value is not the same as the tax roll land real market value. Defendant presents no evidence in support of the tax roll real market value or to dispute Plaintiffs determination. Even though the court agrees with Defendant that the income approach is "the best and most accurate measure of value for income producing multifamily properties," the court cannot accept Defendant's allocation of the total value between land and improvement. (Def s Ex A at 15.) Defendant accepted the tax roll land value as accurate when allocating the total value between land and improvements without submitting evidence to support its conclusion that the real market value on the tax roll is accurate. Plaintiffs decision not to appeal the land real market value is not evidence that the tax roll value is accurate. The court is persuaded by Plaintiffs comparable sale evidence that the tax roll land value is not accurate. Based on the evidence, the court determined a land real market value of $5,000,000. Given that the subject property's real market value must be divided into two separate values and the court can only order a change to the value appealed, the subject property's improvement real market value is $7,309,000. *Page 10 
 III. CONCLUSION
The parties stipulated that the subject property's real market value for tax year 2007-08 is $12,309,000. Plaintiffs evidence supports a land real market value of $5,000,000. Now, therefore,
IT IS THE DECISION OF THIS COURT that the improvement real market value identified as Account R22411 for tax year 2007-08 is $7,309,000.
Dated this ______ day of January 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanner onJanuary 21, 2009. The Court filed and entered this document on January21, 2009.
[1] Unless otherwise stated, references to the Oregon Revised Statutes (ORS) are to year 2007.
[2] The $2,300,000 appears to be incorrect. See Ptf's Ex 1 at 16, "Final conclusion of raw land value" which was $2,200,000.
[3] Rohlfing's cost approach detail listed costs for 16 segments labeled "Imp I1" and one segment labeled "Imp I2." (Def's Ex A at 24 through 40.) The total of those segments was $14,005,550. Rohlfing did not explain the difference between the total of those segments ($14,005,550) and his improvement "indicated" value ($12,899,670). (Def's Ex A at 12.)
[4] Taylor later eliminated one sale from his analysis.
[5] The Oregon Supreme Court sets forth "valid reasons for separate values for the land and improvements." See Nepom, 272 Or at 254
(footnote omitted).
[6] In Nepom, the court clarified that it was "stating that separate appeals challenging one value or the other are permissible, and that thevaluation does not have to be determined on a unit basis." Nepom,272 Or at 256, fn 4. (emphasis added.) *Page 1